TAAN v. AMERICAN LOAN & TRUST CO.

1. MORTGAGES—AMOUNT DUE ON MORTGAGE ORDINARILY GOVERNED BY AMOUNT DECLARED DUE IN NOTICE OF FORECLOSURE.

Ordinarily, amount due on mortgage is governed by amount declared to be due in notice of mortgage foreclosure sale, and if premises are sold for more than amount declared due, then, after payment of interest and costs, mortgagor is entitled to balance paid; but where mortgage covers leasehold interest only, and mortgagee is compelled to pay as ground rent sum greater than difference between amount declared due and amount received on sale to preserve leasehold mortgaged, it may add amount of rental so paid to amount declared due, and in such case there is no balance to which mortgagor is entitled.

2. SAME—MORTGAGOR MAY NOT TAKE ADVANTAGE OF OWN DEFAULT.

Mortgagors may not claim damages against mortgagee because latter paid that which it was duty of former to pay to preserve rights of mortgagee and bondholders under its mortgage, and nonpayment of which would have resulted in loss of thing mortgaged, since mortgagors may not take advantage of their own default.

3. SAME—RIGHT OF MORTGAGOR TO RENT FOR PERIOD MORTGAGEE IN POSSESSION.

Mortgagors are not entitled to rents or profits for period during and after foreclosure that mortgagee was in possession of premises completing building pursuant to terms of mortgage, in absence of substantial proof that commercial or market value of rental of said premises exceeded amount of ground rent paid by mortgagee to protect leasehold interest mortgaged, which it was duty of mortgagors to pay.

Appeal from Wayne; Mandell (Henry A.), J. Submitted June 18, 1929. (Docket No. 14, Calendar No. 31,997.) Decided September 4, 1929.

Bill by Whitehead & Kales Company against Lee Taan and others to foreclose a mechanic's lien.

Cross-bill by Lee Taan and others against the American Loan & Trust Company for an accounting. From decree for cross-defendant on the cross-bill, cross-plaintiff Sum H. Young appeals. Affirmed.

*George B. Murphy,* for appellant.

*Race, Haass & Allen,* for appellee.

Potter, J. The University of Michigan was the owner of certain land in Detroit situated on Woodward avenue, and November 15, 1911, said premises· were leased by the regents of the University of Michigan to Edwin S. George for a period of 40 years from and after January 1, 1912. By *mesne* assignments and subleases, Lee Taan, August 28, 1919, became possessed of the premises as sublessee. Under his lease, he was to pay for rent of the premises $2,833.33 monthly in advance for the first 28 months of the term; $2,916.67 in advance for the next 60 months of said term; at the rate of $37,000 a year for the next 5 years of said term payable in monthly instalments; for the next 10 years the sum of $40,000 per year payable in monthly instalments, and for the remaining 10 years an annual rental of $44,000 payable in monthly instalments. The lease provided that within 14 months from September 1, 1919, Taan should erect and pay for a building on said premises to cost at least $150,000. Lee Taan assigned an undivided one-half interest of his sublease on May 18, 1920, to Sing Get Moy, and November 4, 1921, he assigned to Sum Hung Young an undivided one-half interest in and to the sublease. November 6, 1919, Lee Taan and Sing Get Moy executed a certificate, under the assumed name statute, certifying they were doing business under the name of the Troca-

dero Hotel Company, Lee Taan and Sing Get Moy, trustees. The Trocadero Hotel Company, together with the Chinese Merchants Association of Detroit, entered into a building contract with Shank Company, an Illinois corporation, for the erection of a five-story store, restaurant, hotel, and ballroom building on said premises, in pursuance of plans and specifications prepared by an architect, by which the hotel company agreed to pay the contractor for all labor and materials employed or used in the construction of the building. Negotiations on behalf of the hotel company were opened with the American Loan & Trust Company in an endeavor to procure a mortgage on the leasehold interest of Lee Taan and Sing Get Moy, and the building to be erected on the premises. May 21, 1920, Lee Taan and wife and Sing Get Moy, widower, executed a mortgage to the American Loan & Trust Company as trustee to secure an issue of bonds in the aggregate of $450,000. This mortgage provided for the sale of the bonds by the trustee, and the application of the proceeds to the construction of the building above mentioned. All the rents, issues, and profits to be derived from said premises and the leasehold interest during the continuance of said mortgage were assigned to the mortgagee as additional security for the payment of the bonds. The mortgagee was authorized to collect the same and use the moneys to discharge the principal or interest due on said mortgage, in payment of the rent accruing under the terms of the lease, or in the payment of other obligations necessary to protect the security of the leasehold interest. The mortgage was to be kept a first lien upon the leasehold interest. The mortgagors were to erect the building above mentioned on said premises and to fully pay for the same and the equipment thereof. The mort-

gage provided that if the mortgagors should unreasonably delay or abandon the construction of the said building or fail to complete the same for any cause, the mortgagee, at its election, might complete the erection of the building, make all necessary contracts therefor, pay at any time any outstanding just bills incurred by the mortgagors, and the mortgagors agreed to repay on demand any sums so advanced. It provided such sums so advanced should be deemed a charge and a further lien on the premises payable forthwith, and if not otherwise repaid, should be payable out of the proceeds of the sale of the property in accordance with the mortgage. The mortgagors were to remove any mechanics' liens within 10 days after the same might be filed against said premises, and in default thereof the mortgagee might discharge such liens. Various other important provisions were contained in said mortgage. It is sufficient, for the purposes of this case, to indicate that after the making and execution of this mortgage, and the mortgagors entered upon the construction of the building in question, they defaulted in the terms of the mortgage. Various liens were filed against the premises, some of which were reviewed by this court in *Whitehead & Kales Co.* v. *Taan,* 233 Mich. 597. This case relates to that, and was tried upon the amended cross-bill of Sum Hung Young in that case. This amended cross-bill was in the nature of a bill to redeem from the foreclosure by advertisement of the mortgage above mentioned. On the trial of the issues involved herein, counsel for the appellant stated appellant was not going to ask the court for an opportunity to redeem, but was going to ask for such moneys as were due to him.

The appellant claims the mortgaged premises were sold for $568,044.54; that the statutory notice

of foreclosure sale showed there was declared to be
due the sum of $518,041.20, and, after making cer-
tain additions and deductions, there is due to the
appellant in surplus moneys arising from the sale
of the premises for more than the amount due upon
the mortgage, $40,271.69. The property was a lease-
hold. The mortgagee took possession of the prem-
ises on default on the part of the mortgagors in the
payment of the rental, January 1, 1921, their default
in erecting the building and in creating a sinking
fund for the retirement of the bonds provided in
said mortgage to be created. It is the claim of ap-
pellant that the fair rental value of the premises at
the time the mortgagee took possession of the prem-
ises was $51,840 a year; the ground rental stipulated
in the lease under which the mortgagors held was
$36,000 a year, and therefore appellant is entitled to
the difference between $51,840 a year and $36,000
during the period of the equity of redemption, or
$15,840, a total of $56,111.69 in all.

The leasehold interest mortgaged was held by the
mortgagors upon condition that they pay the stipu-
lated ground rental monthly. In case of default in
the payment of this ground rental the leasehold in-
terest could be terminated by the lessor. Default
was made in the payment of the monthly instalments
of ground rental, and the mortgagee in pursuance of
the terms of the mortgage, in order to preserve and
protect the leasehold interest of the mortgagors in
said premises and the mortgage upon said leasehold,
paid the monthly instalments of ground rent. At
the date of the notice of the sale to foreclose the
mortgage, all this ground rent was not due, $8,750
of it accruing during the period of advertisement.
Between the time of the default upon the part of the
mortgagors in the payment of such ground rent and

the date of the expiration of the equity of redemption, the mortgagee was compelled to pay $54,451.55 in ground rent. Ordinarily, the contention of appellant is correct, that the amount due on a mortgage is governed by the amount declared to be due in the notice of mortgage foreclosure sale, and if the premises are sold for more than the amount declared due, then, after the adjustment and payment of the interest and costs, the mortgagor is entitled to the balance paid; but in this case, where the mortgagee was compelled to pay a sum greater than this claimed difference as ground rent to preserve the leasehold mortgaged, we think it may add the amount of such rental so paid to the amount declared due in the notice of mortgage foreclosure sale. It was the duty of the mortgagors to pay such ground rental. The mortgagors cannot claim damages against the mortgagee because the mortgagee paid that which it was the duty of the mortgagors to pay to preserve the rights of the mortgagee and the bondholders under its mortgage, and which sums, if not paid, would have resulted in the loss of the thing mortgaged. There is no claim but the appellee paid out in good faith sums sufficient to more than absorb the difference in the amount declared to be due in the notice of mortgage foreclosure sale and the sale price realized on the sale, and that these sums were paid out for the preservation of the leasehold interest mortgaged. The appellant cannot take advantage of his own default. He cannot receive from appellee money paid out in pursuance of the mortgage as rental to protect the leasehold interest mortgaged which it was the duty, of the appellant to pay. The mortgagee claims that, upon default made by the mortgagors in the payment of the rent due to preserve said leasehold interest mortgaged, it was its duty, in conse-

quence of the appellant's default, to pay such rental and to take possession of the premises in pursuance of the terms of the mortgage, and to complete the building which it was the duty of the mortgagors to complete. No claim is made for the rental value of the premises during the period of the equity of redemption in the pleadings, but on the hearing a claim was made by the attorney for appellant for the rents and profits during that period. During this period the mortgagee was in possession of the premises completing the building. No amendment was made to the pleadings in accordance with this suggestion of counsel, and there is no substantial proof adduced that at the time and under the circumstances under which the appellee was in possession of the premises before, during, or after foreclosure, and during the period of the equity of redemption, the commercial or market value of the rental of said premises was more than the sum of $36,000 annually stipulated in the lease under which the appellant held, which rent the mortgagee, by reason of appellant's default, was compelled to pay. We think the trial court arrived at the correct conclusion, and the decree herein is affirmed, with costs.

North, C. J., and Fead, Wiest, Clark, McDonald, and Sharpe, JJ., concurred. The late Justice Fellows took no part in this decision.